"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA C. MANNEY,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. CV 06-1400 AN<br><br>MEMORANDUM AND ORDER |

## I. INTRODUCTION

Pursuant to 42 U.S.C. § 405(g), Plaintiff is seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act ("Act"). Both parties have consented to proceed before the undersigned Magistrate Judge. In accordance with the Court's Case Management Order, the parties have filed a joint stipulation and request for an order summarily deciding the issues concerning remand and/or immediate payment of benefits ("JS"). For the reasons stated below, this case is remanded for further proceedings pursuant to Sentence Four, and the Commissioner's request for an order affirming her final decision is denied.

In the JS, Plaintiff contends that the Administrative Law Judge ("ALJ") erred by

1  failing to properly evaluate the opinion of Plaintiff's treating physician, Munther A.
2  Hijazin, M.D.  The Commissioner disagrees.

3  <u>Plaintiff's Treating Physician</u>

4  Plaintiff has a long history of suffering from diabetes mellitus. [Administrative Record ("AR") at 14.] In July 2001, Plaintiff began seeing Dr. Hijazin with complaints of a burning sensation and pain in her lower extremities. [AR at 398.] After conducting a nerve conduction study in September 2001, Dr. Hijazin found Plaintiff had a sensory peripheral polyneuropathy in the lower extremities, most likely secondary to her diabetes mellitus. [AR at 394.] Plaintiff eventually began complaining of numbness, tingling and pain in her upper extremities. [AR at 388.] An electromyography ("EMG") and a nerve conduction study from October 2002 indicated that Plaintiff suffered from motor and sensory peripheral polyneuropathy in the upper extremities. [AR at 388.]

In October 2002, Dr. Hijazin completed a neurological questionnaire on Plaintiff's behalf. [AR at 279-80.] Dr. Hijazin diagnosed Plaintiff with severe peripheral neuropathy and assessed the following limitations: decreased reflexes all over; impairment of fine movement of Plaintiff's extremities; decreased use of hands for fingering and handling; unsteady, wide gait; assistive walking device necessary for long distances and uneven terrain; and decreased sensation in upper and lower extremities. [AR at 279-80.]

A September 2003 nerve conduction study of Plaintiff's lower extremities indicated that Plaintiff's condition was becoming more severe. [AR at 374.] In September 2001, Plaintiff's bilateral tibialis posterior and common peroneal nerves showed normal distal latency, amplitude and conduction velocity. [AR at 394.] In September 2003, Plaintiff's bilateral tibialis posterior nerves showed decreased amplitude on the right and normal to borderline amplitude on the left and her common peroneal nerves showed prolonged distal latency on the left and decreased conduction velocity. [AR at 374.] An EMG of Plaintiff's lower extremities showed signs of chronic denervation of the bilateral tibialis anterior, perioneous longus, gastrocnemial medialis,

1  extensor digitorum communis, and abductor hallucis muscles. [AR at 374.] In addition
2  to diagnosing Plaintiff with peripheral polyneuropathy, Dr. Hijazin reported that lower
3  lumbar radiculopathy could not be ruled out. [AR at 374.]

4  In July 2004, Dr. Hijazin completed a medical source statement of ability to do
5  work-related activities on Plaintiff's behalf. [AR at 371-74.] Dr. Hijazin noted that
6  Plaintiff suffered from severe peripheral polyneuropathy, balance problems, weakness,
7  pain, and decreased sensation in her upper and lower extremities. [AR at 372-73.] Dr.
8  Hijazin opined that Plaintiff needed to use a hand-held assistive device for ambulation
9  and prolonged standing, was able to lift and carry less than 10 pounds, was able to stand
10 and walk less than two hours in an eight-hour workday, had a limited ability to push, pull,
11 reach, handle, finger, and feel, and was unable to engage in climbing, balancing,
12 kneeling, crouching, and crawling. [AR at 372-73.] Dr. Hijazin found Plaintiff to be
13 compliant with medication and treatment. [AR at 372.]

14 The ALJ rejected Dr. Hijazin's opinion. [AR at 22.] In so doing, the ALJ relied,
15 in part, on the opinion of examining physician Jamshid Tamiry, M.D. [AR at 17-18, 282-
16 86.] In December 2002, Dr. Tamiry examined Plaintiff and found she suffered from
17 diabetes mellitus (insulin dependent) and peripheral diabetic polyneuropathy. [AR at
18 282-6.] From a functional standpoint, Dr. Tamiry found Plaintiff was capable of lifting
19 and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking six
20 hours, and sitting six hours, but that Plaintiff should avoid unprotected heights, hazards,
21 operating machinery, moving machinery, ladders, and exposure to vibration.[1/] [AR at
22 286.] While it was within the province of the ALJ to resolve conflicts in the medical
23 evidence, *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), his findings must still

---

[1/] Although the ALJ relied, in part, on Dr. Tamiry's opinion, he found that Plaintiff was actually more limited in her ability to perform work-related functions. [AR at 17.] Specifically, the ALJ found that Plaintiff was limited to a range of sedentary work involving sitting six hours, standing and walking two hours, lifting and carrying 10 pounds, and that Plaintiff should avoid unprotected heights, dangerous machinery, climbing ladders, ropes or scaffolds, and more than occasional climbing, balancing, stooping, kneeling, crouching and crawling. [AR at 16.]

Page 3

1  be based on substantial evidence supported by the record as a whole. 42 U.S.C. § 405(g);
2  *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ was also
3  required to provide specific, legitimate reasons for rejecting Dr. Hijazin's opinion and
4  favoring the opinions expressed by non-treating physicians such as Dr. Tamiry. *See*
5  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996)("Even if the treating doctor's opinion
6  is contradicted by another doctor, the Commissioner may not reject this opinion without
7  providing 'specific and legitimate reasons' supported by substantial evidence in the
8  record for doing so." (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).
9  The ALJ failed to do so in this case.

10        The record establishes that, in reaching his aforementioned findings, Dr. Tamiry
11  did not have the benefit of Dr. Hijazin's subsequent July 2004 report and opinion
12  concerning Plaintiff's work restrictions, or Plaintiff's September 2003 nerve conduction
13  study and EMG results. [AR at 371-74, 410-12.] In the decision, the ALJ criticizes Dr.
14  Hijazin's statement that Plaintiff was compliant with medications. [AR at 18, 372.]
15  According to the ALJ, the medical records and Plaintiff's own testimony show that
16  Plaintiff did not always take her diabetes medication as prescribed. [AR at 18, 444-48.]
17  Although the record supports the ALJ's finding, the entire record establishes that it is not
18  a legitimate reason for discrediting Dr. Hijazin's finding. The record shows Plaintiff
19  acknowledged that she did not take her medications for a brief period in March 2004,
20  because she was very upset about breaking up with her boyfriend and had been
21  experiencing suicidal thoughts. [AR at 356-58.] Despite this brief lapse of compliance,
22  in October 2004, Plaintiff's physician, Dr. Weinstein, reported that Plaintiff was
23  compliant with her medication and treatment and there is no other indication in the record
24  that Plaintiff failed to take her medications as prescribed. [AR at 369.]

25        The ALJ's finding that Dr. Hijazin's treatment notes were cursory and not based
26  on an objective examination are also not legitimate reasons for discrediting Dr. Hijazin's
27  opinions and findings because they conflict with substantial evidence in the record. [AR
28  at 18.] Dr. Hijazin had been treating Plaintiff since July 2001. During this time, Dr.

1    Hijazin examined Plaintiff on numerous occasions and administered three nerve
2    conduction studies and two EMG's. [AR at 374, 388, 394.] Dr. Hijazin's handwritten
3    chart notes specifically describe symptoms such as tingling, numbness, difficulty
4    walking, pain, ankle swelling, and a burning sensation in her feet. [AR at 381-82, 391,
5    398.] Dr. Hijazin also elaborated on his findings and diagnosis in the October 2002
6    neurological evaluation and July 2004 medical source statement, as discussed in more
7    detail above. [AR at 279-80, 371-73.]

8          The ALJ further found that the record, in general, conflicted with Dr. Hijazin's
9    assessment of Plaintiff's residual functional capacity ("RFC"). [AR at 18.] For example,
10   the ALJ noted that the "composite record and lay record" supports a walking and standing
11   capacity of two hours in an eight-hour workday, the "record supports a limitation to
12   occasional balancing and other maneuvers, but not a preclusion on such functions," and
13   "the composite record does not support manipulative restrictions." [AR at 18.] The ALJ
14   does not support these reasons with findings or notations in the record. Thus, they do not
15   constitute specific, legitimate reasons for rejecting Dr. Hijazin's opinion. *See Regennitter*
16   *v. Comm. Of Soc. Security Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999)("conclusory
17   reasons will not justify an ALJ's rejection of a medical opinion"); *Lester*, 841 F.3d at
18   830-31; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)("General findings are
19   insufficient; rather, the ALJ must identify what testimony is not credible and what
20   evidence undermines the claimant's complaints"). Moreover, the nerve conduction
21   studies, reports, and treatment notes from Dr. Hijazin provide support for his conclusions
22   concerning Plaintiff's work-related restrictions. [AR at 277, 279-80, 372-75, 388, 394,
23   412.]

24         Finally, the ALJ cites an inconsistency in the medical source statement completed
25   by Dr. Hijazin. [AR at 18, 371.] The ALJ notes that, although Dr. Hijazin first checked
26   a box indicating that Plaintiff's lifting and carrying ability was not affected by her
27   impairment, he then proceeded to check more specific boxes that show he found Plaintiff
28   was only able to lift and carry less than 10 pounds. [AR at 18, 371.] Although it is true

1  that the ALJ is authorized to resolve ambiguities in the record, the ALJ's findings must
2  still be supported by substantial evidence in the record.  In this particular case, the ALJ
3  correctly observed an apparent ambiguity in Dr. Hijazin's findings regarding Plaintiff's
4  lifting/carrying RFC.  However, the record shows the ALJ's findings are not supported
5  because with substantial evidence in the record because there is other substantial medical
6  evidence in the record that shows Dr. Hijazin's conclusory opinion was more likely than
7  not an error.  [AR at 371.]  Indeed, the ALJ's own finding that Plaintiff's impairments
8  severely limited her ability to lift and carry tends to underscore his finding that Dr.
9  Hijazin's mistakenly checked off the wrong box in the medical source statement.  [AR
10 at 15.]
11      Accordingly, the Court finds that remand is appropriate for the Commissioner to
12 re-evaluate whether Plaintiff is disabled within the meaning of the Act, after giving
13 proper consideration to Dr. Hijazin's full opinion and a fair reading of the entire record.

## II.  CONCLUSION

16      For the reasons discussed above, the Court finds the ALJ's denial of Plaintiff's
17 claims for benefits is not free of legal error and supported by substantial evidence.
18 Accordingly, Plaintiff's request for an order remanding this case for further proceedings
19 pursuant to Sentence Four of 42 U.S.C. § 405(g) is GRANTED, and the Commissioner's
20 request for an order affirming the Commissioner's final decision and dismissing the
21 action is DENIED.  The clerk shall enter judgment, close the file and terminate all
22 pending motions.

24 DATED:     January 3, 2007         _____ARTHUR NAKAZATO_____
                                              ARTHUR NAKAZATO
25                                       UNITED STATES MAGISTRATE JUDGE